# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Case No. 4:13-CR-48 |
| | § | (Judge Crone/Judge Mazzant) |
| MINH TRONG NGUYEN | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress With Authorities and Argument in Support (Dkt. #32). After considering the motion, the response (Dkt. #33), the reply (Dkt. #34-1), and the oral arguments of the parties made on August 26, 2013, the Court recommends Defendant's motion be denied.

### BACKGROUND

On May 1, 2013, Defendant filed his motion to suppress, asserting that the evidence seized as a result of a search warrant executed on February 26, 2012, was based on a warrant affidavit lacking in sufficient probable cause. The facts set forth in the warrant affidavit indicate that on December 14, 2012, Justin Benson, the affiant, and Drug Enforcement Administration ("DEA") Special Agent Justin Hitz met with a Cooperating Source ("CS") who advised that a male, with a first name of "Minh", was involved in indoor marijuana grow operations. The CS advised that he/she was approached by "Minh" and asked to be the tender/worker at a new, larger, indoor marijuana grow location. The CS stated that "Minh" was working with Hao Le ("Le"), but they had not located a house to grow in at that time.

On December 17, 2012, the affiant confirmed the cellular number given to him by the CS belonged to Defendant Minh Nguyen ("Nguyen" or "Defendant"), and conducted a records check of Defendant. He also obtained driver's license information for Defendant.

1

On December 20, 2012, the affiant and Special Agent Hitz met with a Source of Information ("SOI"), who confirmed Nguyen's cellular telephone numbers, identified Nguyen from his picture, and advised that Nguyen and Le were growing marijuana together. The SOI advised that Le was currently driving a white Toyota Camry.

On January 10, 2013, the affiant received information indicating that Nguyen was the subscriber of one of the cellular telephones, and that the other phone was a pay-as-you-go phone. On January 16, 2013, the affiant and Special Agent Hitz again met with the CS, who advised that Nguyen wanted to start a marijuana grow operation with Le. The CS indicated that Le drove a white BMW, and Nguyen was known to have additional indoor marijuana grow operations in Plano and Richardson.

On January 22, 2013, Special Agent Hitz received information from the SOI advising that the indoor marijuana grow operation was located in the Knights Bridge subdivision, and gave directions to the suspected residence. On January 25, 2013, Special Agent Hitz and the affiant followed the directions and located the address at 3516 Charleston Drive, Richardson, Texas 75082. The house had all the windows covered with blinds and/or curtains or some type of covering. The rear privacy fence had a brand new lock on the gate by the garage. It was trash day, and only a bag of landscaping clippings was placed out for collection. The affiant stated that he had a strong suspicion that an indoor marijuana grow operation was being conducted at this location.

The affidavit recites that the affiant conducted several various records checks, including a property records check, a criminal history check of Nguyen, and an electrical records check for the residence. These records did not reveal anything out of the ordinary, other than a criminal history for Defendant. The affiant observed a Toyota Camry at the residence. The affiant

attempted multiple times to collect trash from the residence, but was unable to do so because there was no trash put out for collection. The affiant indicated that this is consistent with indoor marijuana growers.

On February 24, 2013, the affiant asked Coppell Police Canine Officer R. Kubicek and his canine partner, Max, to conduct a free air sniff at the residence. Officer Kubicek indicated that Max gave a positive alert for the presence of a narcotics odor on the front door and the garage door of the residence. Also on February 24, 2013, DEA Garland Police Department Task Force Officer Roberds and the affiant walked up to a window on the south side of the residence and advised that they could hear a humming sound consistent with the sound of fans running to circulate air.

The search warrant was signed on February 25, 2013, based on the facts summarized above, and executed on February 26, 2013. When law enforcement officers executed the search warrant, they discovered Le in the house tending a large indoor marijuana grow operation. Among other things, officers seized approximately 627 live, mature marijuana plants and various items of growing equipment. Le gave a statement implicating Defendant in the indoor grow operation at the time of his arrest. Subsequently, law enforcement officers learned that Defendant was associated with a second residence at 2618 Lakewood Drive, Garland, Texas, and Defendant was arrested driving away from that residence on March 21, 2013. At that time, Defendant gave consent to search the residence on Lakewood Drive, and officers discovered another marijuana grow operation located at that residence.

## ANALYSIS

Defendant argues that the facts set forth in the warrant affidavit are insufficient to establish probable cause. Specifically, Defendant contends that after the United States Supreme

Court's recent decision in *Florida v. Jardines*, 133 S.Ct. 1409 (2013), a dog sniff conducted on a defendant's home is an illegal search within the meaning of the Fourth Amendment. Defendant also contends that the officers' actions in approaching the house to listen for the humming of the fans is an illegal search because the officers intruded upon the curtilage of the residence to be able to hear the sounds. Defendant argues that once the facts regarding the dog sniff and the sound of humming fans is excised from the warrant affidavit, the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006). Thus, Defendant contends that the good-faith exception to the warrant requirement should not apply in this case because the warrant is a bare bones affidavit.

When considering the validity of a search warrant, the Court engages in a two-step inquiry: (1) the Court must determine whether the good-faith exception to the exclusionary rule applies; and (2) then the Court must determine whether the warrant was supported by probable cause. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003); *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The Court need not reach the question of probable cause if the good-faith exception applies, and the case does not involve a "novel question of law." *Payne*, 341 F.3d at 399; *Laury*, 985 F.2d at 1311; *Satterwhite*, 980 F.2d at 320. Since this case does not appear to present a novel question of law, the Court should initially address the good-faith issue.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court concluded "that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Satterwhite*, 980 F.2d at 320 (citing *Leon*, 468 U.S. at 922-23). The

good-faith exception does not apply under any one of four situations: (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not have reasonably relied on its validity. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). However, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Satterwhite*, 980 F.2d at 321 (citations omitted). A "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* (citations omitted). In the present case, Defendant argues that the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, or that the affidavit was a "bare bones" affidavit.

From the Court's perspective, the central issue in this case is whether the good-faith exception to the warrant requirement applies, and, if so, whether the Court should excise the illegal search information, i.e., the dog sniff and humming fans, from the warrant when it conducts the good-faith analysis. At the hearing, the Court questioned both counsel for the Government and counsel for Defendant about this issue. Counsel for Defendant argued that in order to apply current, existing Supreme Court law, the Court must excise the illegal search from the warrant affidavit in considering whether the officers acted in good faith. Defendant's counsel stated that if the Court failed to excise the dog sniff search from the warrant affidavit,

then no defendant whose case was currently pending could reap the benefit of the Supreme Court's recent decision in *Jardines*. Counsel for the Government contended that the sole purpose of the good-faith exception was to protect law enforcement officers who attempt to rely on current, binding legal precedent. The Government asserted that if the Court failed to consider the law enforcement officer's good-faith reliance on the dog sniff as a permissible basis for probable cause, then that would undercut the purpose of the good-faith exception.

The exclusionary rule is "'not a personal right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Davis v. United States*, 131 S.Ct. 2419, 2426 (2011) (citations omitted). "The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations." *Id*. "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id*. at 2427. When the police act with deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, then the benefits of deterring future violations is strong and outweighs the costs. *Id*. "But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful… or when their conduce involves only simple, 'isolated' negligence… the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.'" *Id*. at 2427-28 (citing *Leon*, 468 U.S. at 919, 908 n.6).

The question before the Supreme Court in *Davis* is the same question that the Court must consider in the present case, which is whether to apply the exclusionary rule when the police conduct a search in objectively reasonable reliance on binding judicial precedent. *See Davis*, 131 S.Ct. at 2428. At the time of the search at issue here, the Supreme Court had not yet decided *Florida v. Jardines*, 133 S.Ct. 1409 (2013), and the existing law in the Fifth Circuit held that a canine alert is sufficient to establish probable cause. *See United States v. Tarazon-Silva*, 166 F.3d 341, 1998 WL 912178, at *1 (5th Cir. 1998) ("The dog-sniff of the outer edge of the garage

and the dryer vent on the exterior wall of the house did not occur on protected curtilage; Tarazon had no reasonable expectation of privacy in those areas."); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (positive dog alert creates probable cause to search vehicle); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 476 (5th Cir. 1982) ("[T]he majority view is that the sniffing of objects by a dog is not a search."). Although the canine sniff search in this case turned out to be unconstitutional under *Jardines*, the Court finds that the officers' conduct was in compliance with existing Fifth Circuit precedent and not culpable in any way. In *Davis*, the Supreme Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." 131 S.Ct. at 2429.

> About all that exclusion would deter in this case is conscientious police work. Responsible law enforcement officers will take care to learn "what is required of them" under Fourth Amendment precedent and will conform their conduct to those rules. But by the same token, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities…The deterrent effect of exclusion in such a case can only be to discourage the officer from "doing his duty."

*Id*. (internal citations omitted). The Fifth Circuit has similarly held that "[a]lthough the good-faith exception most frequently operates to avoid suppression of evidence obtained in reasonable reliance on a facially valid search warrant… the good-faith exception also applies to a search that was legal at the time it was conducted but has been rendered illegal by an intervening change in the law." *United States v. Curtis*, 635 F.3d 704, 713-14 (5th Cir. 2011); *see also United States v. Woerner*, 709 F.3d 527 (5th Cir. 2013).

In the present case, the officers reasonably relied on existing Fifth Circuit precedent finding that a canine sniff search and alert is not a search within the meaning of the Fourth Amendment. The canine sniff search was a permissible method of gathering information and was sufficient to establish a finding of probable cause. The intervening change in the law with

7

the Supreme Court's decision in *Jardines*, does not defeat the officers' good-faith reliance on the search warrant based on existing Fifth Circuit law. Thus, the Court finds the good-faith exception applies, and the Court ends its analysis at this stage.[1]

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant's Motion to Suppress With Authorities and Argument in Support (Dkt. #32) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 30th day of August, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[1] The Court agrees that the evidence of humming fans could not have been reasonably relied on by the officers; however, excising that fact alone from the warrant affidavit is not sufficient to demonstrate that the affidavit is a bare bones affidavit, especially given the fact that the dog sniff search alone is sufficient to establish probable cause for the search warrant.